IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT SCHALLOCK,                   *

       Plaintiff,                     *

-vs-                                  *    Case No.

STATE OF WISCONSIN DEPARTMENT OF     *
CORRECTIONS,

       Defendant.                   *

---

## COMPLAINT

---

Plaintiff Robert Schallock, by his attorney, A. Steven Porter, for and as his Complaint against the above named defendant, alleges, states, avers and shows the Court as follows:

## JURISDICTION AND VENUE

1.     This is an action to secure protection and redress deprivations of rights pursuant to Section 504 of the Vocational Rehabilitation Act of 1973, 29 U.S.C. Section 794, as amended, which provides legal and equitable relief for, *inter alia*, persons who have been subjected to unlawful discrimination in employment on the basis of disability or perceived disability; and pursuant to 28 U.S.C. Sections 2201 and 2202, for legal, equitable and declaratory relief. Jurisdiction over this action is vested in this Court pursuant to Section 505(A)(2) of the Vocational Rehabilitation Act of 1973, 29 U.S.C. Section 795(A)(2), see, *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992) and *Cannon v. University of Chicago*, 441 U.S. 677, 696 (1979); and pursuant to 28 U.S.C. Section 1331 and 1343(a)(3) and (4).

1

2.      Venue with regard to plaintiff's claims is vested in this Court pursuant to 28

U.S.C. Section 1391(b).  The unlawful employment practices alleged herein were committed in

the Western Judicial District of the State of Wisconsin.


## PARTIES

3.      Plaintiff Robert Schallock is an adult whose permanent residence is in the

Western District of Wisconsin at 2525 Atlas Avenue in Warrens, Wisconsin, Jackson County,

Wisconsin 54666.

4.      Defendant State of Wisconsin Department of Corrections (DOC) is a principal

administrative unit of the executive branch of the State of Wisconsin,  a sovereign State of the

United States,  created under Section 15.46,  Wis. Stats.,  with principal offices located at 3099

East Washington Avenue, Madison, Dane County, Wisconsin 53704 in the Western District of

the State of Wisconsin.  The DOC is the state's largest cabinet agency charged with

responsibility for the safe custody and supervision of criminal offenders using the best, most

effective correctional policies and procedures.

5.      Defendant DOC's sovereign immunity with regard to plaintiff's cause of action

under 29 U.S.C. Section 794 has been expressly abrogated pursuant to 42 U.S.C. Section 2000d-

7 wherein Congress acted pursuant to its powers conferred by Section V of the fourteenth

Amendment to the United States Constitution and its powers conferred by Article I,  Section 8 of

the United States Constitution.  In accepting federal funding, the State of Wisconsin DOC has

agreed to submit to the jurisdiction of this court for enforcement of Section 504 of the

Rehabilitation Act.

**ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION**

6.      Plaintiff Robert Schallock has been employed by the Defendant State of Wisconsin Department of Corrections (DOC) at the New Lisbon Correctional Institution (NLCI) since 2006 as a Teacher/Guidance Counselor. A few years into his DOC position, he was elected to be union steward by his peers. He always took his steward duties very seriously.

7.      Plaintiff has been treated for a chronic anxiety disorder for more than fifteen years.

8.      Plaintiff's anxiety disorder is a mental impairment that is a disabling condition in that it substantially limits one or more of plaintiff's major life activities, including his ability to control his mood and his emotions especially in response to stressful situations, his ability to communicate, to establish and maintain relationships and to interact with others effectively especially in stressful situations and his ability to enjoy life and maintain a positive disposition.

9.      Medical and other records recognize plaintiff as having the impairments described in paragraphs seven (7) and eight (8), above.  As such, the mentally disabling conditions described in those paragraphs are "disabilities" in the meaning of the Rehabilitation Act of 1973.

10.     Defendant perceived plaintiff as having the impairments described in paragraphs seven (7) and eight (8), above, and, also perceived that these impairments substantially limited plaintiff in regard to the major life activity of "working."  As such, the mentally disabling conditions described in those paragraphs are "disabilities" in the meaning of the Rehabilitation Act of 1973.

11.     Plaintiff's performance evaluations always indicated that he met or exceeded the standards of performance expected of him in performing his job duties.  He has been commended

on a number of occasions for his performance. Plaintiff has always cared about the welfare of the inmates and has done his best to guide and support them with genuine compassion and positive energy.

12.     In June, 2013, defendant Department of Corrections' central office sent an email to all staff stating that staff voting in the upcoming union election would not receive a cost of living pay increase.

13.     On or about June 27, 2013, plaintiff told his supervisor, Rebecca Kennedy, that the "state could kiss my ass if they thought they would intimidate me into not exercising my constitutional right to vote in the union election."

14.     On June 28, 2013, defendant placed plaintiff on a paid involuntary administrative leave.

15.     From June 28 through July 1, 2013, defendant conducted a disciplinary investigation of plaintiff for his conduct regarding Supervisor Kennedy. In the investigation defendant learned that neither Ms. Kennedy nor anyone else felt threatened or endangered by plaintiff's conduct and that no one had ever felt in danger or threatened by plaintiff's conduct in the past.

16.     On August 2, 2013, defendant, without explanation or justification, ordered plaintiff to submit to a psychological evaluation of his fitness for duty with a psychologist designated by CorVel Corporation, a national provider of risk management solutions for the worker's compensation, auto, health and disability management industries, contracted with by defendant.

17.     On or about August 14, 2013, plaintiff met with psychologist Paul M. Caillier, Ph.D., for the fitness-for-duty evaluation ordered by defendant.

18.     On, August 27, 2013, Dr. Caillier sent his fitness-for-duty report concerning plaintiff to Timothy Duoma, Warden at New Lisbon Correctional Institution (NLCI).

19.     Dr. Caillier's evaluation of plaintiff did not reference plaintiff's job description or identify the essential functions of plaintiff's job. Dr. Caillier's evaluation did not directly test or evaluate plaintiff's ability to perform any of the essential functions of his specific job. Dr. Caillier's report did not reference any of plaintiff's medical or mental health providers nor did it reference any of plaintiff's medical records or disciplinary records.

20.      By letter dated September 4, 2013, Warden Duoma notified plaintiff that defendant was placing him on an unpaid medical leave of absence effective September 6, 2013, for an unspecified duration.

21.     In his letter of September 4, 2013, to plaintiff, Warden Duoma stated, in part:

Dr. Caillier reports you are currently unfit for duty as a Teacher/Guidance Counselor due to your untreated mental health condition. This information indicates you have an impairment which substantially limits major life activities, specifically work. Because there is no accommodation that can be made for your impairment (specifically, for the inability to work), you are currently not fit for duty as a Teacher/Guidance Counselor. As such, you are being placed out on an unpaid medical leave (leave without pay) effective Friday, September 6, 2013.

22.     Warden Duoma's letter did not specify the essential functions of plaintiff's job nor did it specify how plaintiff's "untreated mental health condition" affected or impaired his ability to perform any of the essential functions of his job.

23.     Plaintiff had not requested or been consulted about the I.M.E. or the medical leave of absence.

24.     Plaintiff was not at that time and never has been disabled from working in his current job or any other job.

25.     Plaintiff was not and has never been disabled from performing any of the essential functions of his job.

26.     Defendant did not engage with plaintiff in an interactive process to ascertain whether a reasonable accommodation was available. Defendant concluded without basis that plaintiff was disabled from working in his current job as well as any and all other jobs and did not attempt to ascertain whether there were other jobs defendant had available that plaintiff could perform and that would have served as a reasonable accommodation. In fact, defendant had other jobs available, including a warehouse job, that plaintiff could have performed, even assuming that defendant's assessment was correct that he was unfit for duty as a Teacher/Guidance Counselor.

27.     Defendant did not specify the duration of plaintiff's leave of absence or the terms or conditions upon which he might return to work.

28.     On September 19, 2013, defendant denied plaintiff's attorney's request for Dr. Caillier's report, despite plaintiff having signed an authorization permitting defendant to release the report to his attorney.

29.     Defendant released Dr. Caillier's report to plaintiff's physician in September, 2013, but, refused to release the report directly to plaintiff or his attorney. Plaintiff was unable to obtain the report from his physician until February, 2014.

30.     Plaintiff contacted various mental health providers seeking a second opinion to rebut Dr. Caillier's report and support his return to work, but, no provider was willing to recommend plaintiff's return to work without reviewing Dr. Caillier's report.

31.     In or about February, 2014, plaintiff's attorney persuaded one of plaintiff's medical providers to release Dr. Caillier's report to her. Plaintiff was then able to obtain an

evaluation from his own psychologist who, upon evaluating plaintiff in early April, 2014,

reported that plaintiff was fit to return to work at his job with defendant.

32.     On April 16, 2014, plaintiff returned to Dr. Caillier for a follow-up evaluation at

defendant's request. On May 6, 2014, Dr. Caillier reported to defendant that, though, according

to Dr. Caillier, plaintiff had not followed the recommendations for treatment in Dr. Caillier's

previous report, plaintiff was fit to perform his job duties at NLCI in a safe manner. Dr. Caillier

stated that plaintiff continued to suffered from a mental impairment that substantially limited a

major life activity.

33.     On June 2, 2014, defendant, without comment or explanation called plaintiff back

to work at NLCI.

34.     An Education Department secretary at NLCI, who did not suffer from a mental

disability, routinely harassed staff for a period of well over 4 years, and, on one occasion, used

vulgarity toward Rebecca Kennedy and made her cry. Defendant did not order the Education

Department secretary to submit to a psychological evaluation, did not declare her to be disabled

from working and did not place her on a medical leave of absence.


**FIRST CAUSE OF ACTION**

35.     Plaintiff incorporates by reference and realleges herein paragraphs one (1)

through thirty-four (34), above.

36.     The State of Wisconsin Department of Corrections is a recipient of Federal

financial assistance in the meaning of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C.

Section 794.

37.     Defendant placed plaintiff on an involuntary leave of absence without pay because of his disabilities and, therefore, defendant's actions constitute unlawful discrimination against plaintiff because of his disability in the meaning of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C Section 794.

38.     Defendant Department of Corrections failed to provide plaintiff with reasonable accommodations to his disabilities that would have allowed him to perform the essential functions of his job and, therefore, unreasonably and unnecessarily placed plaintiff on an involuntary leave of absence for behavior that would have been adequately controlled or avoided if reasonable accommodations had been made.  Defendant's actions constitute unlawful discrimination against plaintiff because of his disability in the meaning of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C Section 794.

39.     As a direct, foreseeable, and proximate result of defendant's unlawful discrimination as complained of herein, plaintiff has suffered injury and damages in the form of lost employment, lost wages, lost employment benefits, loss of reputation among his coworkers, and emotional distress. These damages and injuries continue into the present and will continue into the foreseeable future.


## SECOND CAUSE OF ACTION

40.     Plaintiff incorporates by reference and realleges herein paragraphs one (1) through thirty-nine (39),  above.

41.     The State of Wisconsin Department of Corrections is a recipient of Federal financial assistance in the meaning of Section 504 of the Rehabilitation Act of 1973,  29 U.S.C. Section 794.

42.     Defendant placed plaintiff on an involuntary leave of absence without pay because it perceived plaintiff to have disabilities that substantially limited his major life activity of working, and, therefore, defendant's actions constitute unlawful discrimination against plaintiff because of his disability in the meaning of Section 504 of the Rehabilitation Act of 1973,  29 U.S.C Section 794.

43.     As a direct, foreseeable, and proximate result of defendant's unlawful retaliation as complained of herein, plaintiff has suffered injury and damages in the form of lost employment, lost wages,  lost employment benefits,  loss of reputation among his coworkers, and emotional distress. These damages and injuries continue into the present and will continue into the foreseeable future.

## THIRD CAUSE OF ACTION

44.     Plaintiff incorporates by reference and realleges herein paragraphs one (1) through forty-three (43),  above.

45.     The State of Wisconsin Department of Corrections is a recipient of Federal financial assistance in the meaning of Section 504 of the Rehabilitation Act of 1973,  29 U.S.C. Section 794.

46.     Defendant's requirement that plaintiff undergo a psychological exam with Dr. Caillier to determine the extent and nature of his disability and his fitness for duty and defendant's decision to place plaintiff on an indefinite medical leave of absence due to his disabilities were not job-related, consistent with business necessity or justified by any legitimate concern about the safety of defendant's employees, inmates or the public at large.

47.     Under the Vocational Rehabilitation Act of 1973 an employer may not require a medical examination or make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless the employer shows that such examination or inquiry is job-related and consistent with business necessity.

48.     Defendant's requirement that plaintiff undergo a psychological exam with Dr. Caillier to determine the extent and nature of his disability and his fitness for duty and defendant's decision to place plaintiff on an indefinite medical leave of absence without pay violated plaintiff's rights as guaranteed by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C Section 794.

49.     As a direct, foreseeable, and proximate result of defendant's unlawful discrimination as complained of herein, plaintiff has suffered injury and damages in the form of lost employment, lost wages,  lost employment benefits,  loss of reputation among his coworkers, and emotional distress. These damages and injuries continue into the present and will continue into the foreseeable future.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff Robert A. Schallock respectfully prays this Court enter judgement on his behalf on his claims against defendant and Order the following relief:

A.      Order defendants jointly and severally to pay to plaintiff an amount sufficient to compensate him for the lost wages he would have received had defendants not unlawfully placed him on an extended medical leave of absence without pay in violation 29 U.S.C. Section 794.

B.      Order defendants to pay to plaintiff an amount sufficient to compensate him for his past and future pain and suffering and emotional distress and loss of professional reputation.

C.      Order defendants to pay plaintiffs' costs, disbursements and attorney's fees

reasonably incurred in this action.

D.      Order such other and further relief as the Court deems just and reasonable under

the circumstances.

PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY OF SIX QUALIFIED PERSONS.


Dated at Madison Wisconsin, this 23rd day of November, 2016.



_____/s/ A. Steven Porter_____
A. Steven Porter
State Bar No. 01000195
Attorney for Plaintiff
Robert A. Schallock



P.O. Box 7093
Madison, Wisconsin 53707
(608) 662-2285
(608) 819-6466 (fax)
asp@mailbag.com